UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK COLSTON,

    Plaintiff,

v.

DIANA REDICK, sued in her individual and official capacity,

    Defendant.

_____/

Case No. 1:02-CV-779

Hon. Richard Alan Enslen

**OPINION**

This matter is before the Court on Plaintiff Mark Colston's Motion for Relief from Judgment or Order pursuant to Federal Rule of Civil Procedure 60(b)(2) or (3). Also before the Court are Plaintiff's Motions to File Amendments to Confrom [sic] to the Evidence and for Temporary Restraining Order and/or Preliminary Injunction.

Plaintiff was an inmate housed within the Michigan Department of Corrections' ("MDOC") Deerfield Correctional Facility and is suing Defendant Diana Redick, a Food Service Leader at that same facility. On March 31, 2005, the Court observed that the parties settled their dispute and the Court ordered dismissal of this action with prejudice based on the parties' joint stipulation. Plaintiff now seeks relief from this dismissal order. Although Plaintiff filed his Motion under Rule 60(b)(2) or (3), the Court considers Rule 60(b)(6) to be the only provision that can potentially afford Plaintiff any relief.[1]

---

[1] Plaintiff has not suggested that there was newly discovered evidence or that Defendant committed any misconduct. Any alleged misconduct was at the hands of persons not party to this action.

Plaintiff contends that he settled this matter out of duress. The parties reached a settlement on March 3, 2005, before United States Magistrate Judge Ellen S. Carmody; however, Plaintiff did not sign the settlement agreement until March 12, 2005. During the period after the parties agreed to settle and the actual execution of the agreement is where the coercion to sign the agreement allegedly occurred. Plaintiff avers that on March 8, 2005, he was instructed to report to the facility's control center to speak with MDOC Inspectors Kevin Lindsey and David Clifton. The Inspectors were investigating a possible romantic relationship between Plaintiff and an MDOC corrections officer. Plaintiff told Inspector Lindsey he did not have a relationship with the officer. Plaintiff claims that Inspector Lindsey threatened to transfer Plaintiff to another prison if he did not cooperate with the investigation. Plaintiff maintains that Inspector Lindsey intimidated Plaintiff about his lawsuit and that Inspector Lindsey stated he and Defendant were good friends.

On March 11, 2005, Plaintiff was again instructed to report to the control center to receive the written settlement agreement for his signature. Plaintiff states that he would not sign the agreement without first reviewing the document and speaking with his attorney.[2] Plaintiff was allowed to speak with his attorney and signed the agreement the next day. Sometime thereafter Plaintiff was transferred to the Hiawatha Correctional Facility.

A settlement agreement is a type of contract and is governed by contract law. *Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479, 487 (6th Cir. 1973). Duress is a device in contract law that works to undue a seemingly valid agreement—those consisting of an offer, acceptance, and supported by consideration—because it was contaminated by duress. The Michigan Supreme Court has said that "[d]uress exists when one by the unlawful act of another is induced to make a contract or perform some

---

[2] Plaintiff was appointed counsel under the Court's *Pro Bono* Appointment Plan.

act under circumstances which deprive him of the exercise of free will." *Norton v. Mich. State Highway Dep't*, 24 N.W.2d 132, 135 (Mich. 1946) (citing *Hackley v. Headley*, 8 N.W. 511, 512 (Mich. 1881)).[3] Plaintiff must demonstrate by a preponderance of the evidence that he did not voluntarily agree to settle and release his claims against Defendant. *Stefanac v. Cranbrook Educ. Cmty.*, 458 N.W.2d 56, 60 (Mich. 1990) (citing *Porth v. Cadillac Motor Car Co.*, 165 N.W. 698 (Mich. 1917)).

Defendant submits that the written settlement agreement was drafted by Plaintiff's attorney and contains several significant recitals of Plaintiff's free will. Section seven of the settlement agreement indicates that Plaintiff had been read the agreement, had it explained to him, "and that those terms are fully understood and voluntarily accepted by him." (Br. in Supp. of Def.'s Am. Resp. in Opp'n to Mot. for Relief from J. or Order, Ex. F). The agreement goes on to indicate in the same section that Plaintiff has had time to review the terms of the agreement "and that he is voluntarily entering into this release." (*Id.*). Under section ten of the agreement, the parties reiterate that they "**HAVE EACH CONSULTED WITH OR HAD AN OPPORTUNITY TO CONSULT WITH THEIR COUNSEL REGARDING THIS AGREEMENT AND ENTER INTO THIS AGREEMENT VOLUNTARILY.**" (*Id.*) (emphasis in original). Finally, Plaintiff recites in his own handwriting below his signature that he "signed the information voluntarily 3-12-2005."

Defendant also submits Inspector Lindsey's sworn affidavit that he made no threats against Plaintiff to induce him to sign the settlement agreement, he had no prior knowledge of Plaintiff's suit against Defendant, and did not know who Defendant was when the alleged coercion occurred.

---

[3] Since the settlement at issue was negotiated and performed in Michigan, the Court finds that Michigan law controls discussion of its validity. *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992); *Chrysler Corp. v. Skyline Indus. Serv. Inc.*, 528 N.W.2d 698, 703 (Mich. 1995) (discussing choice of law in contracts).

Inspector Clifton's affidavit indicates the same. The inspectors also state that the purpose of their March 8, 2005 meeting with Plaintiff was to investigate a homemade knife and his involvement with the female corrections officer.

Despite his explicit recitals that he voluntarily agreed to settle this matter and Defendant's evidence that no coercive threats were ever made, Plaintiff believes his assent was the product of duress. Beyond the averments in his Rule 60(b) Motion, Plaintiff has submitted no evidence to support a finding of duress.[4] Furthermore, Plaintiff's Rule 60(b) Motion was not sworn to under penalty of perjury and the allegations contained therein cannot be considered evidence.[5] 28 U.S.C. § 1746; *Williams v. Browman*, 981 F.2d 901, 904 (6th Cir. 1992). Thus, the Court finds Plaintiff cannot demonstrate that his agreement to settle his claims against Defendant was the product of duress or coercion. This is particularly true given the substantial and compelling evidence submitted by Defendant to the contrary.

Turning to Plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction, Plaintiff claims that he is being retaliated against because of this lawsuit and related grievances and seeks injunctive relief to halt these violations. The Court observes that because this case was

---

[4] Plaintiff does submit the affidavit of Matthew Delveaux in support of his Rule 60(b) Motion. However, this evidence in no way impacts whether or not Plaintiff was under duress when he executed the settlement agreement. The Delveaux Affidavit concerns events in October 2005. Similarly, Plaintiff's Motion to File Amendments to Confrom [sic] to the Evidence also concerns events in October 2005. Neither submission bears upon the critical period before March 12, 2005, when the alleged coercion occurred. Thus, even if the Court granted Plaintiff's Motion to File Amendments to Confrom [sic] to the Evidence, the evidence contained therein would have no impact on his Motion for Relief from Judgment or Order.

[5] Plaintiff's Motion to File Amendments to Confrom [sic] to the Evidence and supporting affidavits are also not sworn to under penalty of perjury. Therefore, the Court will deny the Motion given 28 U.S.C. § 1746, and because the proposed submission is irrelevant to Plaintiff's Motion for Relief from Judgment or Order. *See supra* note 4.

terminated by joint stipulation and the Court will deny Plaintiff's Motion for Relief from Judgment or Order, the Court no longer retains jurisdiction to issue any injunctive relief.  *Cohn v. United States*, 259 F.2d 371, 376 (6th Cir. 1958) ("Generally, when a District Court acquires jurisdiction over the parties and the subject matter of a case filed in its court, such jurisdiction continues, in the absence of statutory enactments to the contrary, until final disposition of the cause."); *cf Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381-82 (1994) (district court loses jurisdiction after dismissal). This Court was divested of jurisdiction when the case dismissed on the parties' stipulation, and only retained jurisdiction for limited purpose of entertaining Plaintiff's Motion under Rule 60(b); since that Motion was denied, jurisdiction is wanting.

Furthermore, the Court finds that had it reached the merits of Plaintiff's motion for injunctive relief, it would have denied that motion because Plaintiff cannot show a strong or substantial likelihood of probability of success on the merits.  *See N.A.A.C.P. v. City of Mansfield, Ohio*, 866 F.2d 162, 166 (6th Cir. 1989); *see also United Food & Commercial Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 347 (6th Cir. 1998); *Weaver v. Univ. of Cincinnati*, 942 F.2d 1039, 1043 (6th Cir. 1991).  Plaintiff has submitted no evidence the Court can properly consider in support of his Motion.[6]

Therefore, Mark Colston's Motions for Relief from Judgment or Order, to File Amendments to Confrom [sic] to the Evidence, and for Temporary Restraining Order and/or Preliminary Injunction shall be denied.  An Order Consistent with Opinion shall enter.

|  |  |
|---|---|
| DATED in Kalamazoo, MI:<br>December 7, 2005 | /s/ Richard Alan Enslen<br>RICHARD ALAN ENSLEN<br>SENIOR UNITED STATES DISTRICT JUDGE |

---

[6] Plaintiff's supporting affidavits are not sworn to under penalty of perjury and are not evidence before this Court.  28 U.S.C. § 1746; *Williams*, 981 F.2d at 904.